UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BENSON ASEMOTA,

                    Plaintiff,

-against-                                    No. 24-CV-7793 (LAP)

CITY OF NEW YORK and NEW YORK          OPINION AND ORDER
CITY DEPARTMENT OF SOCIAL
SERVICES HUMAN RESOURCES
ADMINISTRATION,

                    Defendants.

---

LORETTA A. PRESKA, Senior United States District Judge:

        Before the Court is the City of New York and New York City Department of Social Services Human Resources Administration's (collectively, "Defendants") motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  Plaintiff has failed to respond to the Motion.  For the reasons set forth below, Defendants' Motion to Dismiss is GRANTED.

---

[1] (See Defendants' Motion to Dismiss ("Mot." or "Mot. to Dismiss"), dated Feb. 28, 2025 [dkt. no. 12]; Declaration of Assistant Corporation Counsel Marina Sukonnik in Support of Defendants' Motion to Dismiss (the "Sukonnik Declaration" or "Sukonnik Decl."), dated Feb. 28, 2025 [dkt. no. 14]; Memorandum of Law in Support of Defendants' Motion to Dismiss ("Defs. Br."), dated Feb. 28, 2025 [dkt. no. 15].)

I.    **Background**[2]

   **A. Factual Background**

   Plaintiff Benson Asemota ("Plaintiff") is a Black male with a national origin of Nigeria, Africa, and a former employee of the New York City Department of Social Services ("DSS"). (Compl. ¶¶ 5, 12.)  The City of New York is the municipality that heads the DSS. (Id. ¶ 7.)  For over twenty-five years, Plaintiff worked for the DSS Human Resources Administration ("HRA"). (Id. ¶ 12.) In 1996, Plaintiff was hired as a Fraud Investigator (Level I) in HRA's Eligibility Verification Review Unit. (Id. ¶ 15.)  Years later, Plaintiff passed civil service examinations that "qualif[ied] him for Fraud Investigator (Level II) and [a]ccountant positions." (Id. ¶ 17.)  In 2000, Plaintiff was effectively transferred into the Medical Assistant Program/Home Care Unit as a per-diem provisional Fraud Investigator (Level II). (Id. ¶ 18.)  Around the same time, Plaintiff applied for a Fiscal

---

[2] The facts in this decision are derived primarily from the Complaint. (Verified Complaint and Jury Trial Demand ("Complaint" or "Compl."), dated Oct. 14, 2024 [dkt. no. 5].)  Additionally, the facts include information incorporated by reference in the Complaint and documents that are integral to Plaintiff's allegations even if not explicitly incorporated by reference. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); Vtech Holdings Ltd. v. Lucent Techs. Inc., 172 F. Supp. 2d 435, 437 (S.D.N.Y. 2001) ("In deciding the motion [to dismiss], the court may consider documents referenced in the complaint and documents that are in the plaintiff's possession or that the plaintiff knew of and relied on in bringing suit.") (citations omitted).

Monitor/Auditor or Management Auditor position and was subsequently interviewed for a Management Auditor (Level I) position.  (Id. ¶¶ 19, 20.)

In July 2000, Plaintiff received notice that he was being promoted to Management Auditor (Level II) on a non-probationary basis.  (Id. ¶ 21.)  However, this promotion was never implemented, and Plaintiff's position did not change.  (Id. ¶ 22.)  As such, Plaintiff remained a Management Auditor (Level I).  (Id. ¶ 37.)

About one year later, on or about July 2001, there were two vacancies for a position of Audit Supervisor.  (Id. ¶¶ 24, 26.) The Audit Supervisor position was "essentially the same position" as the Management Auditor (Level II) position and was a permanent role.  (Id. ¶¶ 25, 28.)  Plaintiff's colleague, Yvonne Humphrey, a Black-Caribbean woman, was promoted to Audit Supervisor allegedly "due to her civil service status."  (Id. ¶¶ 24, 25.)  At the time Ms. Humphrey was promoted, Plaintiff requested to be elevated from a per-diem provisional employee to a permanent employee based on his civil service status but was not promoted. (Id. ¶ 27.)  On or about March 19, 2003, Plaintiff inquired about conflicts with respect to those promoted from provisional to permanent employee.  (Id. ¶ 25.)

On or about September 28, 2009, Plaintiff re-applied for the Management Auditor (Level II) position.  (Id. ¶ 29.)  Plaintiff was advised that the vacant position "was meant for an outside

hire and, due to a hiring freeze, an internal hire would result in the loss of current staff position." (Id. ¶ 30.)

On June 23, 2013, Plaintiff met with Arnold Ng, who is of Asian descent, to discuss his concern about the lack of promotions amongst several Management Auditors (Level I) "with ten to fifteen years of experience." (Id. ¶¶ 29, 31.) Plaintiff "noted that pursuant to the current collective bargaining agreement, the Management Auditor (Level II) position did not require civil service status, and that promotion was at the discretion of management." (Id.)

Between 2016 and 2022, Plaintiff applied to about forty management and supervisory roles within the DSS. (Id. ¶ 32.) While a few of Plaintiff's applications resulted in interviews, none of them led to hiring or promotion. (Id. ¶ 33.) In the meantime, several other individuals with "much less work experience than Plaintiff" were hired in the Management Auditor (Level II) position. (Id. ¶ 34.) As a result, Plaintiff filed numerous inquiries and complaints to the DSS. (Id. ¶ 35.)

On September 17, 2019, Plaintiff emailed the Office of Human Capital Management ("OHCM") complaining that his 2000 promotion to Management Auditor (Level II) was never implemented. (See id. ¶ 37; Ex. A to the Sukonnik Decl. at ECF 3 ("Ex. A") [dkt. no. 14-

1].)[3]  OHCM reviewed Plaintiff's file, informed him it contained typographic errors, affirmed that he was correctly appointed to Management Auditor (Level I), and advised him that there was no Management Auditor (Level II) in existence when Plaintiff was transferred in 2004.  (Compl. ¶¶ 38, 39.)

Plaintiff was dissatisfied with OHCM's response and escalated the complaint to Assistant Deputy Commission Maura Hayes-Chaffe, a white woman, in September 2019.  (Id. ¶ 40.)  With no resolution, Plaintiff sent another email to Hayes-Chaffee on March 21, 2021, and requested his promotion to Management Auditor (Level II) be implemented.  (Id. ¶ 41; see Ex. A at ECF 4.)  Plaintiff then contacted Interim Executive Director Maria Halagao, who is of Asian descent, on February 28, 2022, to request that his still unresolved complaint be forwarded to Assistant Deputy Commissioner Christine Maloney, a white woman.  (Compl. ¶¶ 42-43.)  Halagao advised that she would escalate the issue but that it was her understanding that Hayes-Chaffee had already decided on Plaintiff's request. (See id. ¶ 44.)  After "many repeated attempts and communications," Plaintiff received a final denial of his request on March 9, 2022. (Id. ¶ 45.)  Plaintiff was again advised that the Management Auditor (Level II) position was not created until 2009 but received

---

[3] Citations to exhibits will use ECF page numbers for clarity.

no clarification regarding why he had not been promoted between 2009 and 2019. (Id. ¶ 46.)

In or around October 2022, Sheronda Williams, who started as a Field Fraud Investigator in 1996, was promoted to the position of Assistant Deputy Commissioner for the Bureau of Fraud Investigation. (Id. ¶ 49.)[4] Plaintiff "remained concerned that employees of African national origin or direct ancestry, like himself, were not promoted within HRA." (Id. ¶ 50.)

**B. Administrative & Procedural History**

In September 2022, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (the "EEOC"). (Id. ¶ 47.) Subsequently, the EEOC provided Plaintiff with notice of right to sue. (See id. ¶ 52.)[5] On October 14, 2024, Plaintiff filed his Complaint in this Court alleging claims of discrimination, retaliation, and hostile work environment on the basis of race and national origin under Title VII of the Civil

---

[4] Unlike the other employees mentioned in the Complaint, Plaintiff does not specify the national origin or race of Sheronda Williams.
[5] The Complaint does not indicate what date the notice of right to sue was issued or received. However, "'a plaintiff's failure to obtain a notice-of-right-to-sue-letter is not a jurisdictional bar, but only a precondition to bringing a Title VII action that can be waived by the parties or the court[,]' and accordingly, a failure to obtain a right-to-sue letter can be excused by the Court on equitable grounds." Syeed v. Bloomberg L.P., No. 20-CV-7464 (GHW), 2022 WL 3447987, at *3 (S.D.N.Y. Aug. 17, 2022) (quoting Pietras v. Bd. of Fire Comm'rs of the Farmingville Fire Dist., 180 F.3d 468, 474 (2d Cir. 1999)). Here, the Court concludes that Plaintiff's failure to state the date on which he received notice of the right to sue does not bar his claims.

Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq.; 42 U.S.C. § 1981; 42 U.S.C. § 1983; and New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296(1).  (Compl. ¶ 2.)[6]  Plaintiff also alleges a violation of N.Y. Civ. Serv. Law § 75.  (Id.)[7]

On February 28, 2025, Defendants filed their Motion to Dismiss, which Plaintiff did not oppose.  A plaintiff's failure to respond to a motion to dismiss does not automatically warrant dismissal.  See McCall v. Pataki, 232 F.3d 321, 323 (2d Cir. 2000) ("If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond . . . does not

---

[6] Plaintiff asserts five causes of action against Defendants: (1) Count One alleges discrimination, hostile work environment, and retaliation on the basis of race and ancestry in violation of Title VII and 42 U.S.C. § 1981; (2) Count Two appears to reallege hostile work environment and retaliation on the basis of race and ancestry in violation of Title VII; (3) Count Three alleges discrimination, a hostile work environment, and retaliation on the basis of race, ancestry, national origin, and ethnicity in violation of NYSHRL; (4) Count Four alleges Defendants knowingly and intentionally-or in the alternative, negligently and recklessly-published and made false statements that affected Plaintiff's reputation and promotability; (5) Count Five alleges discrimination and retaliation in violation of 42 U.S.C. § 1983.  (See id. ¶¶ 54-84.)
[7] In the Complaint's introduction, Plaintiff alleges claims of defamation and/or negligence, malicious prosecution, fraud, and breach of contract under N.Y. Civ. Serv. Law § 75.  (Id.  ¶ 2.) With the exception of defamation and/or negligence, none of these claims is reincorporated into any of Plaintiff's five causes of action.  Further, the Complaint is devoid of any factual allegations to support these claims.  As such, the Court concludes that Plaintiff fails to allege plausibly the aforementioned claims, including the defamation and/or negligence claim reincorporated into Count Four.  Therefore, Defendants' Motion to Dismiss is GRANTED with prejudice as to his purported claims under the New York Civil Service Law and as to Count Four.

warrant dismissal."). In the interest of determining the merits of Plaintiff's claims, the Court concludes that Plaintiff's failure to oppose the Motion does not automatically warrant dismissal of the Complaint.

## II. <u>Legal Standards</u>

### A. Pleading Standard Under Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 570). That "standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> (internal quotation marks and citation omitted). Evaluating "whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u> at 679.

Consideration of a motion to dismiss requires the Court to "accept as true all factual allegations and draw from them all reasonable inferences" in the plaintiff's favor. <u>Rothstein v. UBS</u>

AG, 708 F.3d 82, 94 (2d Cir. 2013) (citations omitted).  The Court is not required, however, "to credit conclusory allegations or legal conclusions couched as factual allegations." Id. (citations omitted).  As such, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citation omitted).

**B. Discrimination**

Plaintiff asserts claims for unlawful discrimination, hostile work environment, and retaliation under Title VII and the NYSHRL. (See Compl. ¶¶ 54-58, 61-64, 68-73.)  Plaintiff's discrimination claims are based upon theories of disparate treatment and hostile work environment.  (See id. ¶¶ 47, 55, 57, 64, 71.)  Plaintiff also claims he was subjected to discrimination in violation of 42 U.S.C. § 1981 and § 1983.  (Id. ¶¶ 57-58, 82.)

    1.  Disparate Treatment

        a. Title VII

To assert a claim of employment discrimination under Title VII, a plaintiff must allege "(1) the employer discriminated against him (2) because of his race, color, religion, sex, or national origin." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 85 (2d Cir. 2015) (citing 42 U.S.C. § 2000e-2(a)(1)). When faced with a Title VII discrimination claim, courts in this Circuit engage in the three-step burden shifting framework that the Supreme Court laid out in McDonnell Douglas Corp. v. Green,

411 U.S. 792 (1973).  <u>Buon v. Spindler</u>, 65 F.4th 64, 78 (2d Cir. 2023) (citing <u>Littlejohn v. City of New York</u>, 795 F.3d 297, 312 (2d Cir. 2015)).

First, under this framework, "the plaintiff must establish a <u>prima facie</u> case of discrimination."  <u>Id.</u> (citing <u>Vega</u>, 801 F.3d at 83).  Second, if the plaintiff establishes a <u>prima facie</u> case, "[t]he burden then shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for the disparate treatment."  <u>Vega</u>, 801 F.3d at 83 (quoting <u>McDonnell Douglas</u>, 411 U.S. at 802).  Third, if the employer successfully articulates a valid reason for its treatment of the plaintiff, the plaintiff must then "prove that the employer's [given] reason was in fact pretext for discrimination."  <u>Id.</u> (internal quotation marks and citations omitted).

What a plaintiff must do to establish his <u>prima facie</u> case differs depending on the stage of the case.  <u>See</u> <u>Littlejohn</u>, 795 F.3d at 307.  During the early stages of litigation, a plaintiff's <u>prima facie</u> requirements are "relaxed."  <u>Id.</u>  At the pleading stage, the Court does not "'require a plaintiff to plead facts establishing a <u>prima facie</u> case.'"  <u>Id.</u> at 308 (quoting <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 511 (2002)).  Instead, "absent direct evidence of discrimination," plaintiff's burden to survive a motion to dismiss is to plead facts sufficient to show "(1) that [he] is a member of a protected class, (2) that [he] was

qualified for the position [he] sought, (3) that [he] suffered an adverse employment action, and (4) can sustain a minimal burden of showing facts suggesting an inference of discriminatory motivation." Littlejohn, 795 F.3d at 311 (citations omitted).

*b. § 1981 and § 1983*

To pursue a claim against a state actor based on the violation of rights guaranteed in § 1981, § 1983 "constitutes the exclusive federal remedy." Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 733 (1989); see also Gladwin v. Pozzi, 403 F. App'x 603, 604-05 (2d Cir. 2010) (summary order) (explaining that plaintiff's § 1981 claims against a state actor are "encompassed" by her § 1983 claims and analyzed under § 1983).[8]  Accordingly, "public employees aggrieved by discrimination in the terms of their employment may bring suit under 42 U.S.C. § 1983 against any responsible persons acting under color of state law." Vega, 801 F.3d at 87 (citing Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 122-23 (2d Cir. 2004)).[9]

To satisfy the pleading standards to state a § 1983 claim, a plaintiff must allege facts that "give plausible support to the

---

[8] § 1983 itself does not create substantive rights but provides "a procedure for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

[9] § 1981 "does not provide a separate private right of action against state actors." Duplan v. City of New York, 888 F.3d 612, 621 (2d Cir. 2018).

. . . requirements that arise under McDonnell Douglas in the initial phase of a Title VII litigation." Farmer v. Shake Shack Enters., LLC, 473 F.Supp.3d 309, 324 (S.D.N.Y. 2020) (quoting Littlejohn, 795 F.3d at 311). Additionally, a § 1983 claim must allege that the individual taking the adverse action was "acting under color of state law." Vega, 801 F.3d at 88 (internal quotation marks and citation omitted).

However, "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). Therefore, to establish a Monell claim against a city based on the unconstitutional actions of its employees, a plaintiff is required to plead three elements: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983). When determining municipal liability, a court "conduct[s] a separate inquiry into whether there exists a policy or custom." Davis v. City of New York, 228 F. Supp. 2d 327, 336 (S.D.N.Y. 2002) (internal quotation marks omitted), aff'd, 75 F. App'x 827 (2d Cir. 2003).

*c. NYSHRL*

Under the NYSHRL, Section 296(1)(a) renders it unlawful "[f]or an employer . . . because of an individual's . . . race,

creed, color, national origin . . . to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a). Up until the NYSHRL was amended on October 11, 2019, a NYSHRL analysis was conducted under the McDonnell Douglas framework. See Flanagan v. Girl Scouts of Suffolk Cnty., Inc., No. 23-CV-7900, 2025 WL 1501751, at *3 (2d Cir. May 27, 2025). Now, courts must scrutinize discrimination claims brought pursuant to the NYSHRL under a more lenient standard. N.Y. Exec. Law § 300; see Doolittle v. Bloomberg L.P., No. 22-CV-09136, 2023 WL 7151718, at *7 (S.D.N.Y. Oct. 31, 2023).[10]

Some courts have described this new standard for a NYSHRL claim as closer to the standard required to establish a discrimination claim under the New York City Human Rights Law ("NYCHRL"). See Livingston v. City of New York, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021). To assert a NYCHRL claim, a plaintiff must show "'differential treatment—that [he] is treated "less well"—because of a discriminatory intent.'" Szewczyk v. Saakian, 774 F. App'x 37, 38 (2d Cir. 2019) (summary order)

---

[10] The 2019 amendment stated that the existing NYSHRL provisions relating to discrimination claims should be "construed liberally[,]" regardless of how analogous federal pleading standards have been construed, N.Y. Exec. Law § 300, reversing the prior practice of analyzing NYSRHL employment discrimination claims under the same standard as Title VII. See, e.g., Weinstock v. Columbia Univ., 224 F.3d 33, 42 n.1 (2d Cir. 2000).

(quoting <u>Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.</u>, 715 F.3d 102, 110 (2d Cir. 2013)).

While some courts have found it unclear whether the 2019 amendment made the NYSHRL and NYCHRL pleading standards the same, <u>see</u> <u>Shaughnessy v. Scotiabank</u>, No. 22-CV-10870, 2024 WL 1350083, at *10 (S.D.N.Y. Mar. 29, 2024); <u>Nezaj v. PS4s50 Bar & Rest.</u>, 719 F. Supp. 3d 318, 335 n.3 (S.D.N.Y. 2024), the Court of Appeals has considered NYSHRL and NYCHRL discrimination claims together.  <u>See</u> <u>Valerio v. Metro. Transp. Auth.</u>, No. 24-CV-1614, 2025 WL 686028, at *3 (2d Cir. Mar. 4, 2025) (summary order).

>    2.  <u>Hostile Work Environment</u>

>        *a. Title VII*

"To establish a hostile work environment under Title VII . . . a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" <u>Littlejohn</u>, 795 F.3d at 320-21 (quoting <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993)).  A plaintiff must satisfy both an objective and a subjective standard.  <u>Id.</u> at 321.  Accordingly, he must allege that both the employer's conduct was "severe or pervasive enough that a reasonable person would find it hostile or abusive, and the [plaintiff] must subjectively perceive the work

environment to be abusive." Id. (internal quotations and citations omitted).

When examining the objective element, a court must "consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Id. (quoting Harris, 510 U.S. at 23). Since the severity and pervasiveness analysis "looks to the totality of the circumstances, the crucial inquiry focuses on the nature of the workplace environment as a whole." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 547 (2d Cir. 2010) (emphasis omitted) (internal quotation marks and citations omitted).

### b. § 1983

A plaintiff's showing to assert a § 1983 hostile work environment claim parallels the showing required to plead a Title VII claim. See Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006); see also Littlejohn, 795 F.3d at 320-21. In addition, to assert a claim against the City, a plaintiff must "prove that the hostile work environment [he] complained of was the product of a [City] 'policy or custom.'" Legg v. Ulster Cnty., 979 F.3d 101, 111 n.5 (2d Cir. 2020) (quoting Monell, 436 U.S. at 694).

*c. NYSHRL*

Historically, to state a hostile work environment claim under the NYSHRL, a plaintiff must plead facts to show that: "(1) the conduct at issue is 'objectively severe or pervasive,' such that a 'reasonable person' would find the environment to be 'hostile or abusive'; (2) the plaintiff 'subjectively perceives [the environment] as hostile or abusive'; and (3) the conduct at issue occurred 'because of' the plaintiff's protected trait." Samuels v. City of New York, No. 22-CV-1904, 2023 WL 5717892, at *9 (S.D.N.Y. Sept. 5, 2023) (quoting Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (per curiam)).

Following the 2019 amendment "that eliminated the 'severe and pervasive' standard," Tortorici v. Bus-Tev, LLC, No. 17-CV-7507, 2021 WL 4177209, at *13 (S.D.N.Y. Sept. 14, 2021) (quoting N.Y. Exec. Law § 300), a plaintiff must "plausibly allege that he . . . was subjected to inferior terms, conditions, or privileges of employment" due to his membership in a protected class. Samuels, 2023 WL 5717892, at *9 (internal quotation marks and citations omitted).

**C. Retaliation**

1. Title VII

Mirroring Title VII discrimination claims, the Court analyzes retaliation claims brought under Title VII with the uniform burden shifting framework set forth by the Supreme Court in McDonnell

16

Douglas.  See Littlejohn, 795 F.3d at 315 (citing Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010)).

Surviving a motion to dismiss under this standard requires that the complaint allege plausibly that (1) the plaintiff participated in a protected activity; (2) the defendant knew of the protected activity; (3) the plaintiff suffered an adverse employment action; and (4) there is a causal connection between the plaintiff's protected activity and the adverse employment action he suffered.  Id. at 316.

"Complaining to a supervisor, instituting litigation, or filing a formal complaint" about discriminatory conduct "are each considered protected activities."  Moore v. Hadestown Broadway Ltd. Liab. Co., 722 F. Supp. 3d 229, 246 (S.D.N.Y. 2024) (citing Ruiz v. City of New York, No. 14-CV-5231, 2015 WL 5146629, at *6 (S.D.N.Y. Sept. 2, 2015)).  A complaint to a supervisor need not have had merit to make it a protected activity.  See Lore v. City of Syracuse, 670 F.3d 127, 157 (2d Cir. 2012) (citations omitted). Instead, an "employee's 'complaint [only] must be sufficiently pointed to be reasonably understood as a complaint of discrimination.'"  Cornetta v. Town of Highlands, 434 F. Supp. 3d 171, 187 (S.D.N.Y. 2020) (quoting Goonewardena v. N. Shore Long Island Jewish Health Sys., No. 11-CV-2456, 2013 WL 1211496, at *9 (E.D.N.Y. Mar. 25, 2013)).  Hence, a plaintiff satisfies the second prong of the retaliation pleading standard if his complaint alleges

plausibly that such protected activity put the defendant "on notice that [Plaintiff's] complaints were about . . . discrimination, not just general unsatisfactory or unfair conduct." Talwar v. Staten Island Univ. Hosp., 610 F. App'x 28, 30 (2d Cir. 2015) (citation omitted).

Adverse employment actions include "any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" Vega, 801 F.3d at 90 (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006)). A plaintiff can allege plausibly his participation in a protected activity caused his adverse employment action either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Gordon v. N.Y.C. Bd. Of Educ., 232 F.3d 111, 117 (2d Cir. 2000).

### 2. § 1983

Like Plaintiff's discrimination and hostile work environment claims, to state a retaliation claim under § 1983, Plaintiff's pleading standard parallels that applicable to a Title VII claim. See Vega, 801 F.3d at 91. Moreover, to establish municipal liability, Plaintiff must allege plausibly a Monell claim: "(1) an

official policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." Batista, 702 F.2d at 397.

       3. NYSHRL

The NYSHRL makes it unlawful for an employer to retaliate or discriminate against an employee because he "has opposed any practices forbidden under this article or because he . . . has filed a complaint, testified or assisted in any proceeding under this article." N.Y. Exec. Law § 296(7). Similar to discrimination claims under the NYSHRL, a plaintiff's burden to plead a sufficient NYSHRL retaliation claim is now more lenient. See Moore 722 F. Supp. 3d at 247 (citations omitted). Applying the NYCHRL standard to the NYSHRL, a complaint alleging retaliation under this relaxed standard is not required to demonstrate that the plaintiff suffered an adverse employment action. McHenry v. Fox News Network, LLC, 510 F. Supp. 3d 51, 67 (S.D.N.Y. 2020).[11] Instead, a plaintiff may survive a motion to dismiss if he "'show[s] that something happened that was reasonably likely to deter a person from engaging in protected activity.'" Id. (quoting Xiang v. Eagle Enters.,

---

[11] There is some disagreement regarding whether pleading standards for retaliation under the NYSHRL and NYCHRL are now the (cont'd) (cont'd) same. Compare Arazi v. Cohen Bros. Realty Corp., No. 20-CV-8837, 2022 WL 912940, at *16 (noting that the "NYCHRL's more liberal pleading standard applies" to NYSHRL retaliation claims following the 2019 statutory amendments) with, Shaughnessy, 2024 WL 1350083, at *12 (noting that "the NYCHRL applies a more lenient standard" than the standard for NYSHRL retaliation claims).

LLC, No. 19-CV-1752, 2020 WL 248941, at *9 (S.D.N.Y. Jan. 16, 2020)).  However, a plaintiff's burden to plausibly allege the other three prongs necessary to state a prima facie retaliation claim under Title VII remains the same for NYSHRL claims.  Id. (citing Malena v. Victoria's Secret Direct, LLC, 886 F. Supp. 2d 349, 362 (S.D.N.Y. 2012)); see also Arazi, 2022 WL 912940, at *17.

## III. **Discussion**

### A. **Claims against the DSS**

Defendants move to dismiss all of the Plaintiff's claims against the DSS, arguing that as a city agency, the DSS is not a suable entity.  (Defs. Br. at 18-19.)  Pursuant to the New York City Charter, "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency." N.Y.C. Charter § 396.  This provision has been construed by courts to mean that New York City departments and agencies lack the capacity to be sued under New York law.  See Ximines v. George Wingate High Sch., 516 F.3d 156, 160 (2d Cir. 2008) (per curiam) (citing Jenkins v. City of New York, 478 F.3d 76, 93 n.19 (2d Cir. 2007)); see also Omnipoint Commc'ns, Inc. v. Town of LaGrange, 658 F. Supp. 2d 539, 552 (S.D.N.Y. 2009) ("In New York, agencies of a municipality are not suable entities.  The only proper defendant in a lawsuit against an agency of a municipality is the municipality itself"); Vasquez v. City of New York, No. 21-CV-

20

9555, 2022 WL 2819468, at *3 (S.D.N.Y. July 18, 2022) ("[C]ity agencies or departments do not have the capacity to be sued under New York law."). Accordingly, all claims against the DSS are dismissed, and the Court will only consider claims against the City of New York.

**B. Applicable Statute of Limitations**

      1. <u>Title VII Claim</u>

          *a. EEOC 300 Day Limit*

A Title VII plaintiff must file a charge of discrimination with the EEOC either 180 or 300 days after an "alleged unlawful employment practice occurred[.]" 42 U.S.C. § 2000e-5(e)(1). "In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice"-such as New York-the 300-day limit applies. <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 109 (2002). "The filing requirement is analogous to a statute of limitations, barring all claims arising outside the 300-day period" absent an applicable exception. <u>Roches-Bowman v. City of Mount Vernon</u>, No. 21-CV-5572, 2022 WL 3648394, at *3 (S.D.N.Y. Aug. 24, 2022) (citation omitted).

Plaintiff filed his EEOC charge in September 2022. (Compl. ¶ 47.) Any employment practices that occurred 300 days before

Plaintiff filed his EEOC charge in September 2022 are therefore time-barred, absent an applicable exception.[12]

One exception to the 300-day filing requirement is the continuing violation doctrine, which applies where the alleged untimely acts "were part of a continuing policy and practice of prohibited discrimination." Valtchev v. City of New York, 400 F. App'x 586, 588 (2d Cir. 2010) (summary order). Because a hostile work environment claim "is composed of a series of separate acts that collectively constitute one 'unlawful employment practice[,]' . . . it does not matter . . . that some of the component acts fall outside the statutory time period." Nat'l R.R., 536 U.S. at 117 (citation omitted). As long as a plaintiff is alleging such acts constitute a single unlawful employment practice, "the entire time period of the hostile environment may be considered for purposes of determining liability." Id. Put differently, a claim for hostile work environment will not be time-barred if (i) all acts constituting the claim are part of the same, continuous alleged unlawful employment practice, and (ii) at least one alleged act falls within the required time period. See id. at 122; see

---

[12] Plaintiff alleges that he filed his EEOC charge in September 2022 but does not specify the date. (Compl. ¶ 47.) Because none of Plaintiff's factual allegations occurred during the period 300 days before September 2022 (November or December 2021), the Court need not identify the particular date that Plaintiff filed his EEOC charge and will consider all allegations after November 2021, which begin in February 2022. (See id. ¶ 42.)

also Patterson v. Cnty. of Oneida, 375 F.3d 206, 220 (2d Cir. 2004) ("[A] plaintiff must at the very least allege that one act of discrimination in furtherance of the ongoing policy occurred within the limitations period.") (citation omitted).

Conversely, "[d]iscrete acts," such as "termination, failure to promote, denial of transfer, or refusal to hire," do not implicate the continuing violation doctrine. Nat'l R.R., 536 U.S. at 112, 114. "Each [discrete] incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice'" that cannot form the basis for a continuing violation claim. Id. at 114; see also Gutierrez v. City of New York, 756 F. Supp. 2d 491, 500 (S.D.N.Y. 2010) (same).

Plaintiff argues that his lack of promotion and hiring were adverse employment actions that demonstrate a continuing violation. (See Compl. ¶ 51.) However, allegations of failure to promote or refusal to hire are considered "discrete acts" and are "not actionable if time barred, even when they are related to acts alleged in timely filed charges." Nat'l R.R., 536 U.S. at 102. Therefore, each discrete discriminatory incident must be individually analyzed to determine timeliness, and all acts that occurred prior to November 2021 are time-barred. See id.[13]

---

[13] Plaintiff's allegation that he applied to approximately forty roles within the DSS between 2016 and 2022 lack the (cont'd)

*b. 90 Day Limit to File Complaint*

After the EEOC issues a right to sue letter following a charge of discrimination, a plaintiff has 90 days to file suit. <u>See</u> 42 U.S.C. § 2000e-5(f)(1); <u>Duplan</u>, 888 F.3d at 622 (2d Cir. 2018) (plaintiff must "file an action in federal court within 90 days of receiving a right-to-sue letter from the agency").

As discussed <u>supra</u> note 5, Plaintiff does not provide the Court with the date he received his right to sue letter. Nevertheless, in the interest of adjudicating Plaintiff's claims on the merits, the Court declines to dismiss the Title VII claims on such a technicality and will assess whether the pleadings state a claim upon which relief can be granted.

2. <u>NYSHRL and § 1983 Claims</u>

Plaintiff's claims under the NYSHRL are subject to a three-year statute of limitations. N.Y. C.P.L.R. § 214(2); <u>see also</u> <u>Kassner v. 2nd Ave. Delicatessen Inc.</u>, 496 F.3d 229, 238 (2d Cir. 2007) (applying a three-year statute of limitations to claims under the NYSHRL).

§ 1981 claims are generally subject to a four-year statute of limitations. <u>See</u> <u>Jones v. R.R. Donnelley & Sons Co.</u>, 541 U.S. 369, 382 (2004). However, when a plaintiff brings § 1981 claims

---

(cont'd) necessary details for the Court to conduct a proper timeliness analysis. (<u>See</u> Compl. ¶ 32.) Even assuming some of Plaintiff's applications were timely, these facts do not lead to a different result as to the merits of his Title VII claims.

pursuant to § 1983, "the claims are subject to [§] 1983's three-year statute of limitations rather than [§] 1981's more variable limitations period." <u>Richardson v. City of New York</u>, No. 17-CV-9447, 2018 WL 4682224, at *12 (S.D.N.Y. Sept. 28, 2018) (citations omitted); <u>see also</u> <u>Hogan v. Fischer</u>, 738 F.3d 509, 517 (2d Cir. 2013) (holding that § 1983 actions filed in New York are subject to a three-year statute of limitations). As discussed <u>supra</u> Part II.B.1.b, Plaintiff's § 1981 claims are "encompassed" by his § 1983 claims and must be brought pursuant to § 1983. <u>Gladwin</u>, 403 F. App'x at 605.

Hence, a three-year statute of limitations applies to Plaintiff's NYSHRL and § 1983 claims. The Complaint was filed on October 14, 2024. Accordingly, any conduct occurring prior to October 14, 2021 is time-barred for purposes of the NYSHRL and § 1983 claims.

### C. Title VII Claims

#### 1. <u>Disparate Treatment</u>

Plaintiff has failed to allege sufficiently the elements of his Title VII discrimination claim. According to the Complaint, Defendants violated Title VII by purposefully discriminating against Plaintiff because he is Black with Nigerian descent. (Compl. ¶¶ 2, 55.) Without direct evidence of discriminatory intent, Plaintiff must allege facts sufficient to demonstrate that he: "(1) is a member of a protected class, (2) was qualified, (3)

suffered an adverse employment action, and (4) has at least minimal support for the proposition that the employer was motivated by discriminatory intent." Buon, 65 F.4th at 79 (citation and brackets omitted). The Court will discuss each prong in turn and confine its consideration of the alleged discriminatory employment practices to those that occurred in or after November 2021. (See supra Part III.B.1.a.)

Plaintiff has satisfied the first prong. He is a Black male from Nigeria, Africa. (Compl. ¶¶ 5, 54, 68.) As such, Plaintiff is a member of a protected class. See Melie v. EVCI/TCI Coll. Admin., No. 08-CV-5226, 2009 WL 1404325, at *6 (S.D.N.Y. May 20, 2009) ("[Plaintiff] is in a protected class because he is Black and is originally from Nigeria.").

Plaintiff also satisfies the second prong—that he was qualified. Plaintiff has broad professional accounting knowledge, was highly accredited in his field, and was qualified for the job he sought under the civil service lists. (Compl. ¶ 14.) Additionally, he received a BBA in accounting from CUNY Baruch College and an MBA in Finance from St. John's University. (Id.) As such, Plaintiff has sufficiently "demonstrate[d] that he possesses the basic skills necessary for performance of the job [he sought]" to meet his burden. De La Cruz v. New York City Hum. Res. Admin. Dep't of Soc. Servs., 82 F.3d 16, 20 (2d Cir. 1996) (internal quotation marks, brackets, and citation omitted).

26

Construing Plaintiff's allegations in the most favorable light, Plaintiff satisfies the third prong, which requires that he suffer an adverse employment action. This Circuit has recognized that discriminatory failure to promote is "within the core activities encompassed by the term 'adverse actions.'" Treglia v. Town of Manlius, 313 F.3d 713, 720 (2d Cir. 2002) (citation omitted); see also Buon, 65 F.4th at 80 ("[I]t is well settled that 'failing to promote' an employee can constitute 'a significant change in employment status' that is tangible and thereby qualifies as an adverse employment action under Title VII.") (citations omitted); Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999) ("Adverse employment actions include . . . refusal to promote") abrogated on other grounds by Lore, 670 F.3d at 164-65. Plaintiff alleges that despite applying for many management and supervisory roles within the organization, he was not promoted. (Compl. ¶¶ 32-33.)[14]

However, Plaintiff plainly fails to satisfy the fourth prong as the Complaint does not provide even a minimal inference of discriminatory motivation. An inference of discrimination can arise from an array of circumstances. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). One such circumstance

---

[14] While some of these applications were submitted before November 2021 and are time-barred, presumably some occurred through 2022 and are timely.

exists where an employer treats a similarly situated employee outside of a protected group (comparator) more favorably. Mandell v. Cnty. of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003) (citing Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000)).

Plaintiff appears to attempt to demonstrate that a comparator was treated more favorably than he was by alleging that in October 2022, Sheronda Williams was promoted to Assistant Deputy Commission for the Bureau of Fraud Investigation. (Compl. ¶ 49.) Fatally, however, Plaintiff fails to allege that Sheronda Williams was either similarly situated or outside of his protected class. Plaintiff merely mentions that Sheronda Williams started working with Plaintiff as a Field Fraud Investigator in 1996. (Id.) Further, Plaintiff does not indicate that he applied for the position of Assistant Deputy Commission for the Bureau of Fraud Investigation. In order to support allegations about his failure to promote, a plaintiff must "ordinarily demonstrate that . . . [he] applied . . . for [the] job." Petrosino v. Bell Atl., 385 F.3d 210, 226 (2d Cir. 2004) (internal quotation marks and citations omitted). Therefore, Plaintiff's allegations involving Sheronda Williams' promotion do not give rise to an inference of discriminatory motivation.

Similarly, Plaintiff's allegation that he was not hired or promoted after applying to "forty various management and supervisory roles" fails to suggest any discriminatory motivation.

(Compl. ¶ 32.)  Not only does the Complaint lack any specifics about these applications and roles, but also it fails to discuss any comparators who filled the positions.[15]

While Plaintiff may have believed that he was not promoted due to discrimination, "without sufficient facts, even the most sincerely held beliefs do not comprise a sufficient basis for withstanding a 12(b)(6) attack."  Williams v. Wellness Med. Care, P.C., No. 11-CV-5566, 2013 WL 5420985, at *6 (S.D.N.Y. Sept. 27, 2013) (citations omitted).  Accordingly, Defendants' Motion to Dismiss Plaintiff's Title VII discrimination claim of disparate treatment is granted.

### 2. Hostile Work Environment

Plaintiff's Title VII hostile work environment allegations are wholly conclusory, and his Complaint puts forth no factual allegations to support them.  Plaintiff asserts that "Defendants' policy and practice of discrimination and retaliation had a detrimental impact on the discipline and retention of individuals . . . of Plaintiff's protected class and [P]laintiff in particular, thereby creating a hostile work environment."  (Compl. ¶¶ 58, 64.)  However, the Complaint is completely devoid of any factual allegations to support this assertion.

---

[15] In addition, as recognized supra note 14, some of these allegations are time-barred.

While Plaintiff may have "subjectively perceive[d] the environment to be abusive," Harris, 510 U.S. at 21, these allegations do not satisfy the objective standard required to establish a hostile work environment under Title VII. The alleged conduct neither constitutes a "single incident [that] was extraordinarily severe, [n]or . . . a series of incidents [that] were sufficiently continuous and concerted to have altered the conditions of [Plaintiff's] working environment." Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002) (internal quotation marks and citations omitted). Accordingly, Defendants' Motion to Dismiss is granted with respect to Plaintiff's Title VII hostile work environment claim.

### 3. Retaliation

Plaintiff fails to state a Title VII retaliation claim. The Complaint alleges that Defendants "engaged in purposeful retaliation based on Plaintiff and others of [his] protected class's good faith complaints of and opposition to discrimination and harassment by treating them differently in the terms and conditions of employment." (Compl. ¶¶ 56, 62.) Plaintiff appears to allege that DSS retaliated against him by refusing to promote him in response to his complaints that he was not receiving a promotion and was not awarded various opportunities. (Compl. ¶ 48.)

Plaintiff sufficiently alleges the first required prong of his retaliation claim—that he engaged in protected activity. Because the majority of Plaintiff's complaints are time-barred (see Compl. ¶¶ 31, 37, 40, 41), Plaintiff's only timely complaints to DSS about his employment status occurred in February and March 2022 (see id. ¶¶ 42-45).  While Plaintiff does not allege that he complained of discriminatory behavior in these 2022 complaints, he claims to have been "concerned that employees of African national origin or direct ancestry, like himself, were not promoted[.]" (Id. ¶ 50.)  Plaintiff has therefore alleged a "good faith, reasonable belief that [he] was opposing an [unlawful] employment practice." Johnson v. City Univ. of New York, 48 F. Supp. 3d 572, 576 (S.D.N.Y. 2014) (internal quotation marks and citations omitted).

With respect to the second prong, Plaintiff fails to allege sufficiently Defendants' knowledge of the protected complaint. Plaintiff does not allege that his timely complaints reported any discriminatory treatment but rather only claims to have objected to his lack of promotion.  (Compl. ¶¶ 42-45.)   "Although particular words such as 'discrimination' are certainly not required to put an employer on notice of a protected complaint," something in the "substance of the complaint [must] suggest[] that the complained-of activity is, in fact, unlawfully discriminatory." Kelly v. Howard I. Shapiro Assocs. Consulting

31

Eng'rs, P.C., 716 F.3d 10, 17 (2d Cir. 2013) (citation omitted).
Here, Plaintiff does not provide any facts to suggest that his
timely complaints to DSS objected to discriminatory behavior.
Plaintiff therefore fails to state a claim of retaliation.

**D. § 1983 Claims**

Plaintiff's claims under § 1983 fail as a matter of law.  The
Complaint fails to establish municipal liability because it lacks
allegations of a particular "official policy or custom" that
deprived Plaintiff of a constitutional right.  Batista, 702 F.2d
at 397.  While Plaintiff generally alleges that there was a "policy
and practice of discrimination and retaliation," the Complaint
does not provide any support for this assertion whatsoever.
(Compl. ¶¶ 58, 64.)  Merely asserting "that a municipality has a
custom, policy or practice that led to the alleged unconstitutional
deprivation is 'generally insufficient to establish Monell
liability.'"  Ezagui v. City of New York, 726 F. Supp. 2d 275, 284
(S.D.N.Y. 2010) (quoting Perez v. City of New York, No. 97-CV-
2915, 2002 WL 398723, at *2 (E.D.N.Y. Mar. 14, 2002)).  While
Plaintiff alleges that he was "concerned that employees of African
national origin . . . were not promoted" and that there was a "lack
of elevation amongst" experienced employees, he does not reference
or present any facts regarding a municipal custom, policy, or
practice.  (Compl. ¶¶ 31, 50.)  Further, these allegations do not
give rise to a concern of "systemic discrimination" against his

protected class based on a "broader policy or practice." <u>Norton v. Breslin</u>, 565 F. App'x 31, 34 (2d Cir. 2014) (summary order). Accordingly, Defendants' Motion to Dismiss Plaintiff's § 1983 claims, which encompass his § 1981 claims, is granted.

**E. NYSHRL Claims**

As to Plaintiff's NYSHRL claims, the Court may decline to exercise supplemental jurisdiction over a claim where all claims over which it had original jurisdiction have been dismissed. <u>See</u> 28 U.S.C. § 1367(c)(3). While district courts have discretion to exercise supplemental jurisdiction over remaining state law claims, the balance of factors will point towards declining to exercise jurisdiction when all federal law claims drop out early on in the lawsuit. <u>See</u> <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 (1988). When evaluating whether to exercise its supplemental jurisdiction, a court balances "judicial economy, convenience, fairness, and comity." <u>Catzin v. Thank You & Good Luck Corp.</u>, 899 F.3d 77, 81 (2d Cir. 2018) (citing <u>Carnegie-Mellon</u>, 484 U.S. at 350). Courts in this district have "routinely decline[d] to exercise supplemental jurisdiction over state . . . claims when the federal claims have been dismissed." <u>Munck v. Simons Found.</u>, No. 23-CV-9188, 2024 WL 4307776, at *9 (S.D.N.Y. Sept. 26, 2024); <u>see, e.g.,</u> <u>Charley v. Total Off. Plan. Servs., Inc.</u>, 202 F. Supp. 3d 424, 432 (S.D.N.Y. 2016).

Further, courts may decline to exercise supplemental jurisdiction over claims that present novel or complex issues of state law. <u>See</u> 28 U.S.C. §1367(c)(1). Here, Plaintiff's NYSHRL claims involve unsettled questions of state law with respect to pleading standards and whether NYSHRL claims should be construed like the NYCHRL. <u>See, e.g.</u>, <u>Valerio</u>, 2025 WL 686028, at \*3 (considering NYSHRL and NYCHRL claims together but recognizing they are separate and independent); <u>McHenry</u>, 510 F. Supp. 3d at 68 (acknowledging that the October 2019 NYSHRL amendments "direct courts to construe the NYSHRL, like the NYCHRL, [more] liberally" (internal quotation marks and citation omitted)); <u>Shaughnessy</u>, 2024 WL 1350083, at \*10 (noting that it is unclear if the 2019 amendment made the NYSHRL and NYCHRL pleadings standards the same); <u>Nezaj</u>, 719 F. Supp. at 335 n.3 (S.D.N.Y. 2024) (questioning the same). Here, the balance of factors weighs in favor of declining jurisdiction over Plaintiff's state law claims. Accordingly, the Court declines to exercise supplemental jurisdiction and will not evaluate the NYSHRL claims. <u>See</u> <u>Daniel v. City of New York</u>, No. 20-CV-11028, 2021 WL 5988305, at \*11 (S.D.N.Y. Dec. 16, 2021) (declining for similar reasons to exercise supplemental jurisdiction over NYSHRL claims after dismissing Title VII claim at the Rule 12(b)(6) stage); <u>Pompey-Primus v. Success Acad. Charter Schs., Inc.</u>, No. 21-CV-3981, 2022 WL 504541, at \*10 (S.D.N.Y. Feb. 17, 2022) (same).

IV.  **Conclusion**

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's claims under Title VII and § 1983 is GRANTED with prejudice.  With respect to the other claims that Plaintiff purports to bring in the Complaint's introduction—defamation and/or negligence, malicious prosecution, fraud, and breach of contract—Defendants' motion to dismiss is GRANTED with prejudice. Finally, Defendants' motion to dismiss Plaintiff's claims under NYSHRL is GRANTED without prejudice.  The Clerk of Court is respectfully directed to close docket entry 12 and to mark the action closed.

**SO ORDERED.**

Dated:      September 16, 2025
            New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge

35